IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TWANNA MEDINA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-15-886-STE |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying her application for supplemental security income (SSI) under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The parties have briefed their positions, and the matter is now at issue. Based on a review of the record and the issues presented, the Court **REVERSES** the decision of the ALJ and **REMANDS** the matter for further proceedings.

I.  **PROCEDURAL BACKGROUND**

Plaintiff filed her application for SSI on January 15, 2013, alleging a disability beginning April 1, 2010. The application was denied initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision.

(TR. 12-23). The Appeals Council denied Plaintiff's request for review, and the decision of the ALJ became the final decision of the Commissioner. This judicial appeal followed.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520; 416.920. The burden of proving disability is the Plaintiff's through the first four steps of the evaluation.

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 15, 2013, the date she applied for SSI. (TR. 14).

At step two, the ALJ first found two of Plaintiff's alleged impairments, schizophrenia and rheumatoid arthritis, were "non-medically determinable impairments." (TR. 14). The ALJ found Plaintiff's hepatitis C, degenerative disc disease and depression were "severe" impairments. (TR. 15).

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any of the presumptively disabling impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 416.925 and § 416.926. (TR. 15).

The ALJ then determined Plaintiff's residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that since January 15, 2013, the claimant has the residual functional capacity to perform less than a full range of light work as defined in 20 CFR 416.967(b). Specifically, she can perform the full range of light work except she can frequently bilaterally push/pull and handle; never climb ladders, ropes, and scaffolds; and occasionally climb ramps, and stairs, balance, stoop, kneel or crawl. She is limited to simple, routine, and

repetitive tasks; occasional interactions with co-workers, supervisors and public; and work free of production rate pace.

(TR. 19). With this RFC, the ALJ determined at step four, based on the testimony of a vocational expert (VE), that the demands of Plaintiff's past relevant work as a general office clerk exceeded her RFC.

At step five, the burden shifts to the Commissioner to demonstrate there are other jobs existing in the national economy that a claimant could perform, even though she cannot perform her past relevant work. If there are no such jobs, then the claimant is disabled. Based on the testimony of the VE, the ALJ found Plaintiff could perform representative jobs such as Housekeeper-cleaner; Routine Clerk; and Advertising Material Distributer. (TR. 22).

Accordingly, the ALJ concluded that Plaintiff was not under a disability and was not entitled to SSI. (TR. 22-23).

### III. ISSUES PRESENTED

On appeal, Plaintiff contends the "ALJ's RFC, Evidentiary, Treating Physician and credibility errors are intertwined." (ECF No. 14:6). In particular, Plaintiff argues that the ALJ erred in finding that her rheumatoid arthritis is a "non-medically determinable impairment." (ECF No. 14:12).

### IV. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if other evidence in the record overwhelms the evidence upon which the ALJ relied, or if there is a mere scintilla of evidence supporting the decision. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). "Evidence is not substantial if it is overwhelmed by other evidence in the record." *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

**V.  ANALYSIS**

Plaintiff challenges the ALJ's rejection of Dr. Diana Hager's[1] opinion as expressed in a Functional Capacity Questionnaire. (ECF No. 14:12). Dr. Hager is Plaintiff's treating physician.

The proper analysis of the opinion of a treating physician is set forth in the regulations and has been repeated by the Tenth Circuit on numerous occasions. An ALJ

---

[1] Plaintiff mistakenly identifies her treating physician as "Dr. Hanigar."

is required to give controlling weight to a treating physician's well-supported opinion, so long as it is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 416.927(d)(2); *see also Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995). When an ALJ decides to disregard a medical report by a claimant's physician, she must set forth "specific, legitimate reasons" for her decision. *See Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996) (*quoting Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987)). Further, there are several specific factors the ALJ must consider, including: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Goatcher v. United States Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995).

The ALJ essentially rejected all of Dr. Hager's opinions as expressed in the Functional Capacity Questionnaire. According to the ALJ, Dr. Hager's opinions were not supported by her treatment records. Before considering any of the evidence in this case, the ALJ found that Plaintiff's rheumatoid arthritis is "a non-medically determinable impairment," defined as an "anatomical, physiological, or psychological abnormalit[y] which cannot be shown by medically acceptable clinical and laboratory diagnostic techniques and/or established by medical evidence consisting of signs, symptoms and

5

laboratory findings." (TR. 15) (*citing* 20 C.F.R. 416.908). But there is a medically acceptable laboratory diagnostic technique for determining the presence of rheumatoid arthritis, and Dr. Hager ordered blood tests that showed Plaintiff's rheumatoid factor was abnormally high. (TR. 289). Moreover, the medical records generated by Dr. Hager consistently diagnosed rheumatoid arthritis and prescribed methotrexate sodium and Plaquenil, medications that are specifically formulated for treatment of rheumatoid arthritis. (TR. 283, 285, 288, 295, 297, 299, 301, and 302). These same records demonstrate Plaintiff was also given various pain medications and occasionally steroid injections.

Ironically, the ALJ relied on these same medical records to discount Plaintiff's allegation of degenerative disc disease:

> Also since January 15, 2013, the treating family practice specialist has followed the claimant primarily with prescribed medication therapies *secondary to complaints of rheumatoid arthritis affecting her neck, back, elbows and knees*.

(TR. 20) (emphasis added). The ALJ appears to have based her conclusions about the non-existence of Plaintiff's rheumatoid arthritis on one medical record from an emergency room doctor that had never treated Plaintiff before and did not know her medical history: "A May 2013 hospital admission yielded the assessment of rheumatoid arthritis questionable and the diagnosis of fibromyalgia was listed." (TR. 14-15; 312, 316).

Moreover, the ALJ's decision misses the mark. Whether Plaintiff's pain is caused by rheumatoid arthritis, fibromyalgia, or degenerative disc disease, the fact remains that Plaintiff has consistently been prescribed pain medication, the side effects of which

the ALJ did not consider. Rather, the ALJ relied on the fact that Plaintiff had been treated for her pain "primarily with prescribed medication" and had not required "surgery or other invasive treatments," had not required hospital admissions, and had "not required referral to a rheumatologist, orthopedist, pain management specialist, physical therapy of rehabilitative therapist." (TR. 20). While these factors might be relevant to an analysis of Plaintiff's credibility regarding the degree of her pain, they do not prove or disprove the existence of rheumatoid arthritis.

On remand, the ALJ will have the opportunity to revisit her credibility assessments after analyzing the treating physician's opinion using the proper framework.

In sum, the ALJ's finding that Plaintiff's rheumatoid arthritis is a "non-medically determinable impairment" is not supported by substantial evidence in the record. Her finding affects steps two through five of the sequential evaluation and reversal and remand is required.

## ORDER

The Commissioner's decision is **REVERSED,** and the case is **REMANDED** for further proceedings.

ENTERED on August 31, 2016.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE